**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
*Northern Division*

DEANNA JONES,                                 *

          Plaintiff,                *

v.                                      Civil No.: **RDB-23-2076**

                               *

CECIL COUNTY, MARYLAND     

                               *

          Defendant.             

                               *

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS**

**INTRODUCTION**

Plaintiff was terminated as a Paramedic for Cecil County ("the County") after she incurred a second DUI arrest and failed to disclose it.  She complains of discrimination based on disability and retaliation after allegedly "sharing concerns" about an "unequal pay" issue related to another paramedic, whom she contends was paid more because she was a supervisor's paramour.  She also contends other County employees with similar issues were treated more favorably.

Her claims include:

Count 1 – Discrimination under the Maryland Fair Employment Practices Act ("MFEPA")
Count 2 – Retaliation under MFEPA
Count 3 – Discrimination under the ADA
Count 4 – Retaliation under the ADA
Count 5 – Retaliation under Title VII
Count 6 – Violation of Article 24 of the Maryland Declaration of Rights

As explained below, Plaintiff fails to state any of these claims, and her Complaint should be dismissed.

**FACTS ALLEGED IN THE COMPLAINT**

Plaintiff began her career as a Paramedic for Cecil County in 2011.  ECF 5 at ¶10.  Her duties included responding to calls for emergency medical assistance, assessing patients, providing first-aid and life support care, and transporting patients to the hospital.  *Id*.   The Complaint notes that in June 2020, Plaintiff was involved in a motor vehicle accident and charged with driving under the influence ("DUI").  *Id*. at ¶12.  Plaintiff ultimately entered a guilty plea to DUI on May 19, 2022.  *See* **Ex. 1** (Criminal Docket).[1]  Plaintiff notified former Chief Brooks, Deputy Donohue, and union President Burnett of her DUI charge and intent to seek treatment at the "Center for Excellence."  ECF 5 at ¶13.

Cecil County "leadership"[2] committed to supporting Plaintiff, and Chief Brooks offered to support her in court proceedings.  *Id*. at ¶14.  Chief Brooks told Plaintiff that though she would not be disciplined, the DUI would be noted in her personnel file and the County would suspend her "medical command," meaning her ability to treat patients.  *Id*.  While suspended, Plaintiff was not permitted to act as a paramedic.  *Id*.  However, once she completed treatment, she was permitted to resume her normal duties.  *Id*.

Plaintiff attended the Center for Excellence from June 22, 2020, through July 31, 2020.  *Id*. at ¶15. During her treatment she was diagnosed with anxiety, depression, and PTSD.  *Id*.  Upon completing treatment, she met with Chief Brooks and President Burchett and "Cecil County leadership" welcomed her back to full duty.  *Id*.

---

[1] The Court may judicially notice these publicly available court records. *See Bly v. Circuit Court for Howard Cnty.*, No. GLR-18-1333, 2019 U.S. Dist. LEXIS 107523, at *13 n.7 (D. Md. June 26, 2019); Fed. R. Evid. 201.

[2] The Complaint does not identify who is included in the term "leadership."

In January 2021, Plaintiff was again arrested and charged with another DUI. *Id*. at ¶16. She informed then union President Adams about the offense. *Id*. According to the Complaint, Adams told Plaintiff that County policy did not require her to report the incident to the County unless she was convicted. *Id*. At that time, Plaintiff's charges had not yet been resolved in the courts, and thus she did not report the DUI to the County. *Id*. There are no allegations in the Complaint indicating that President Adams reported the offense to the County, that Plaintiff reported it, or that the County was otherwise aware of it either at the time it occurred or shortly thereafter. Nor is there any reason to believe President Adams was correct in his advice.

That same month, Plaintiff was on a medical call with newly appointed Chief Tome. *Id*. at ¶17. Chief Tome allegedly told Plaintiff that his former colleague, Chuck Evans, had attended the Center for Excellence as well and that he had asked Evans about Plaintiff's treatment. *Id*. Evans told Chief Tome that Plaintiff suffered from PTSD. *Id*. Chief Tome's alleged statement that he solicited information about Plaintiff's "confidential protected health information" made her uncomfortable. *Id*. at ¶18. According to the Complaint, Chief Tome "touted and taunted [Plaintiff] with his knowledge regarding her disability, causing her both embarrassment and fear of further retaliation." *Id*. at ¶20.[3] Plaintiff alleges that at the scene of a medical call Chief Tome told her, "I know why you're in treatment and I know you have a drinking problem." *Id*. Chief Tome allegedly "also attempted to solicit more information from [Plaintiff]" though the Complaint does not offer particulars or factual development as to this vague allegation.

---

[3] The Complaint does not specify the basis for use of the term "further retaliation" insofar as no act of retaliation has been pled, at least up until that point.

In May 2021, Plaintiff learned that the County hired a new paramedic at a "much higher rate than the usual starting salary for the position." *Id*. at ¶28.  Plaintiff "discussed her concerns" at a supervisors' meeting with Assistant Chief Budzialek.  *Id*. at ¶29.  As a union board member, Plaintiff also "shared her concerns" with the union and assisted in filing employee grievances.  *Id*. at ¶30.  The Complaint alleges that the basis for the higher rate of pay was an alleged sexual relationship between the paramedic and Assistant Chief Budzialek.  *Id*. at ¶¶30-31.

When Plaintiff "complained about such discriminatory treatment" the County placed her on administrative leave pending an investigation, the details of which were allegedly kept from her  *Id*. at ¶¶32-33.  On July 9, 2021, the County told Plaintiff it was terminating her because of her DUI charge.  *Id*. at ¶34.  Lawson told Plaintiff that her DUI charge was "a disgrace to the County" and that her behavior was "conduct or behavior that would bring discredit to the County."  *Id*. According to the Complaint, Plaintiff was terminated "just months after she complained about unequal hiring practices" and after Chief Tome "taunted [her] regarding her treatment for her disabling condition."  *Id*. at ¶35.

Though the Complaint discusses Plaintiff's June 2020 DUI case, there is nothing in the pleadings that references when and how the County learned of her 2021 arrest. *Id*. at ¶¶38-41.

Plaintiff checked into a rehabilitation program for alcohol abuse on September 28, 2022. *Id*. at ¶23, months after her termination.

Plaintiff contends in ¶43 that comparators were treated more favorably – that is, other County personnel had alcohol-related issues but were not terminated.  *Id*. at ¶43-44.

## ARGUMENT

**A. PLAINTIFF FAILS TO STATE A RETALIATION CLAIM; "SHARING CONCERNS" OF ALLEGED UNEQUAL PAY BASED ON ROMANTIC FAVORITISM IS NOT PROTECTED ACTIVITY.**

Counts 2, 4, and 5 allege retaliation under the Maryland Fair Employment Practices Act (STATE GOVT. ARTICLE § 20-606), the ADA, and Title VII, respectively. The analysis applicable to each is the same. *See Payne v. MedStar Health, Inc.*, No. RDB-21-2841, 2022 U.S. Dist. LEXIS 224368, *14 (D. Md. Dec. 12, 2022) ("this Court has routinely analyzed MFEPA discrimination claims under the same framework as claims brought under various federal statutes.") (citations omitted). To state a claim, Plaintiff must plead facts to plausibly allege that (1) she engaged in a protected activity, (2) her employer took adverse action, and (3) the protected activity was causally connected to the adverse action. *Okoli v. City of Balt.*, 648 F.3d 216, 223 (4th Cir. 2011) .

Plaintiff cannot satisfy the first prong on the pleadings. A protected activity may fall into two categories, participation and opposition. *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005). Here, Plaintiff's retaliation claim is predicated on her purported opposition to an alleged unequal pay issue. For this activity, which Plaintiff characterizes as "sharing her concerns" and assisting with filing grievances, *see* ECF 1 at ¶¶29-30, to be considered protected opposition, Plaintiff must show (1) that she reasonably believed that the employment action she opposed constituted a Title VII violation, and (2) that her conduct in opposition was reasonable. *Netter v. Barnes*, 908 F.3d 932, 937-38 (4th Cir. 2018).

Here, Plaintiff did not reasonably believe she was "sharing concerns" about an employment action that constituted a Title VII violation. "Favoritism, while unfair, is not violative of Title VII

in the absence of improper discriminatory intent."[4] *Nichols v. Comcast Cablevision of Maryland*, 84 F. Supp. 2d 642, 655 (D. Md. 2000) (citing *Holder v. Raleigh*, 867 F.2d 823, 825-26 (4th Cir. 1989)); see also *Settle v. Baltimore County*, 34 F. Supp. 2d 969, 1001 (D. Md. 1999) (explaining that favoritism, rather than racial discrimination, was behind a disparate opportunity in training.)

Courts around the country have uniformly concluded that favoritism towards alleged paramours is not actionable discrimination.  In *Womack v. Runyon*, 147 F.3d 1298 (11th Cir. 1998), a male Postal Service employee sued the Postmaster General for sex discrimination under Title VII based on contentions that he was denied promotion due to his supervisor's favoritism toward an alleged paramour. The *Womack* Court relied on the Second Circuit Court of Appeal's reasoning in *DeCintio v. Westchester County Med. Ctr.*, 807 F.2d 304 (2nd Cir. 1986), *cert. denied*, 484 U.S. 825 (1987). In *DeCintio*, seven male respiratory therapists sued their employer under Title VII, alleging that a female co-worker was promoted, to a position for which the plaintiffs were qualified, only because she was romantically involved with the head of the department. *Id.* The Second Circuit held that losing a promotion based on a consensual romantic relationship between the department head and his paramour does not state a claim for sex discrimination under Title VII, and pointed out that other women in the plaintiffs' position were not promoted either. The department head did not base his adverse decision on the plaintiffs' gender, but rather his preference for his paramour.  *Id.* at 308.

---

[4] Though the Court must assume the truth of the favoritism allegation at this stage, the County vehemently denies it.  The paramedic at issue was not a new hire, had many years of experience, and was not engaged in the sexual relationship that is alleged.  She was paid for her seniority and the County was able to ultimately satisfy the union that the pay was not improper.

The Fourth Circuit and others have followed suit.  *See also Becerra v. Dalton*, 94 F.3d 145 (4th Cir. 1996), *cert. denied*, 519 U.S. 1151 (1997) (holding that allegations that a superior promoted an employee because they were sexually involved did not state a claim for sex discrimination in violation of Title VII); *Taken v. Oklahoma Corp. Comm 'n*, 125 F.3d 1366, 1369-70 (10th Cir. 1993) (same); *Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1353-54 (7th Cir. 1995) (same, in dicta). *Ayers v. American Telephone & Telegraph Co.*, 826 F. Supp. 443, 445 (S.D. Fla. 1993) (explaining that that "[t]he 'discrimination' is not based on sexism (whether gender or activity), but is rather more akin to nepotism. The favoritism is gender neutral, albeit unfair, justification for the given action."); *Watson v. HSU Dev., Inc.*, No. GJH-13-2071, 2015 U.S. Dist. LEXIS 72962, *11 (D. Md. June 5, 2015) (noting that a close personal relationship between employee and supervisor, while not necessarily an appropriate reason for a pay disparity, does not amount to actionable discrimination); *Murray v. City of Winston-Salem*, 203 F. Supp. 2d 493, 502 (M.D.N.C. 2002) (stating, "Sexual favoritism is not sex discrimination because plaintiffs are not prejudiced because of their sex; rather, they are discriminated against because the official prefers the paramour" and that "[b]ecause the alleged preferential treatment disadvantaged both male and female employees under [the supervisor], Plaintiff's allegations of sexual favoritism are insufficient to state a claim under Title VII.").   Thus, Plaintiff's "sharing concerns" about an unequal pay issue predicated on favoritism is not reporting actionable discrimination.

The County recognizes, however, that the inquiry does not end here.  It concedes that a Plaintiff bringing a retaliation claim need not establish that the employment practice she complained of *actually* violates the law.  *See Adams v. Giant Food, Inc.*, 225 F. Supp. 2d 600, 606 (D. Md. 2002).  However, "the Plaintiff must have held a reasonable good faith belief at the time

she opposed an employment practice that the practice was violative of Title VII." *Id*. (citation omitted). To do so, Plaintiff must allege facts demonstrating both that she subjectively believed the practice was unlawful, and that her belief was objectively reasonable in light of the facts. *Id*.

Here, like in *Adams*, there is no basis to conclude from the Complaint that Plaintiff can satisfy this standard. Paragraph 29 of the Complaint alleges that Plaintiff "discussed her concerns" about the pay issue at a supervisors' meeting. Paragraph 30 goes on to state that she "shared her concerns with the union" and "assisted in filing employee grievances." ECF 1 at ¶¶29-30. The Complaint contends that by virtue of paying this paramedic more because of her alleged sexual relationship, the County was "discriminating against other more qualified EMS employees who were paid at a lower rate." *Id*. at ¶31. But being "more qualified" is not a protected category. Nor has Plaintiff brought any claims under the Equal Pay Act here. The mere allegation that she "shared concerns" at a supervisors' meeting and as a union board member helped other paramedics file grievances does not amount to subjective and objective belief that her "concerns" amounted to reporting illegal discrimination. Plaintiff never complained to the County that it was discriminating against any protected category of employee; rather, she "shared concerns" about paying a paramedic more than others based on an alleged personal relationship. That is not protected activity.

Moreover, even assuming it was, Plaintiff cannot satisfy the causal nexus that is required to pin her termination on her "sharing of concerns." As the Complaint concedes, Plaintiff incurred a second DUI arrest in January 2021 that she did not disclose to the County (apparently on the advice of he union president). Her termination in July 2021 was the result of that second arrest as

well as her failure to disclose it.  *See* **Ex. 2** (Termination Letter). [5]  Thus, she cannot establish the third element either, and there is no reasonable inference to be drawn that her "sharing of concerns" was the true reason for her termination.

Accordingly, Plaintiff fails to state a retaliation claim.

**B.  PLAINTIFF FAILS TO PLAUSIBLY ALLEGE SHE SUFFERED DISCRIMINATION BECAUSE OF A DISABILITY.**

Plaintiff also fails to state a claim for discrimination under MFEPA or the ADA in Counts 1 and 3.  Title I of the ADA concerns employment. It prohibits employment discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  The ADA also bars the discharge of a qualified employee because she is disabled. *See Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 328 (4th Cir. 2014).

A "qualified individual" is defined in the ADA as a person who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).  A disability is defined as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment[.]" *Id.* § 12102(1); *see Gentry v. E. W. Partners Club Mgmt. Co.*, 816 F.3d 228, 239 (4th Cir. 2016) (quoting 29 C.F.R. § 1630.2(k)(1)). Major life activities include, but are not limited to,

---

[5] The Court may consider the termination letter at the 12(b)(6) stage because it is integral to the Complaint, referenced in the pleading, and there is no dispute as to its authenticity.  *See, e.g., Carter v. SNC-Lavalin Constructors, Inc.*, No. DKC-17-3198, 2019 U.S. Dist. LEXIS 29474, at *8 (D. Md. Feb. 25, 2019) (considering a termination letter in a motion to dismiss).

"sleeping, walking, standing, lifting, bending . . . working" and "reproductive functions." 42 U.S.C. § 12102(2)(A)-(B). In the ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (the "ADAAA"), Congress considerably broadened the definition of disability, as well as the standard for "substantially limits." *See Miller v. Md. Dep't of Natural Resources*, 813 Fed. App'x 869, 875 (4th Cir. 2020) (Mem.); *Summers*, 740 F.3d at 329.

 "To establish a claim for disability discrimination under the ADA, a plaintiff must prove '(1) that she has a disability, (2) that she is a "qualified individual" for the employment in question, and (3) that [her employer] discharged her (or took other adverse employment action) because of her disability.'" *Jacobs*, 780 F.3d at 572 (quoting *Stowe—Pharr Mills, Inc.*, 216 F.3d at 377).

Without needing to delve into the first two elements, which are disputed, at this stage the Complaint fails to state a disability discrimination claim simply because "[i]t is well established that an employee can be terminated for violations of valid work rules that apply to all employees, even if the employee's violations occurred under the influence of the disability." *Pernice v. City of Chicago*, 237 F.3d 783, 785 (7th Cir. 2001); *see also Despears v. Milwaukee County*, 63 F.3d 635, 636 (7th Cir. 1995) ("alcoholism was not the only cause of his being convicted of drunk driving. Another cause was his decision to drive while drunk.").

Though Plaintiff may contend that her DUI charges were caused by her alcoholism, the ADA permits employers to "hold an employee  . . who is an alcoholic to the same qualification standards for employment or job performance and behavior that [the employer] holds other employees . . .." *Budde v. Kane County Forest Pres.*, 603 F. Supp. 2d 1136, 1142 (N.D. Il. 2009); 42 U.S.C. § 12114(c)(4).  In short, "the ADA neither prevents employers from holding persons

suffering from alcoholism . . . [to] reasonable rules of conduct, nor protects alcoholics from the consequences of their own misconduct." *Id*. at 1143 (citation and internal quotes omitted).

Plaintiff was terminated because of two criminal court actions arising out of DUI arrests in Pennsylvania.[6]   **Ex. 2.**   There are no facts pled to plausibly established that Plaintiff was discharged because of her disability; rather, Plaintiff was patently discharged because of her second DUI arrest, as well as her failure to notify the County that it even occurred.

Plaintiff fails to state a viable disability discrimination claim, and these counts should be dismissed as well.

### C. PLAINTIFF FAILS TO STATE AN ARTICLE 24 CLAIM BECAUSE SHE HAS NOT OFFERED A TRUE COMPARATOR.

Finally, in Count 6, Plaintiff brings a state constitutional claim under Article 24 of the Maryland Declaration of Rights, which is the state analogue to the Due Process Clause of the Fourteenth Amendment. *See Canaj, Inc. v. Baker & Div. Phase III*, 391 Md. 374, 424 (2006); *Carter v. State*, 367 Md. 447, 458 (2002). Here she alleges that the County failed to "establish policies, practices, and customs sufficient to secure the constitutional rights of plaintiff, [and] denied plaintiff equal protection under the law . . .." ECF 5 at ¶65. Count 6 goes on to allege that the County treated Plaintiff differently from similarly situated colleagues. "Where a plaintiff attempts to rely on comparator evidence to establish circumstances giving rise to an

---

[6] In fact, subsequent to her termination, Plaintiff was arrested again in September 2022 and charged with her third DUI. *See Commonwealth of PA v. Jones*, Docket No. MJ-02000-CR-0001002-20022.  That case remains pending. She was also cited in May 2023 with driving without a license and driving while suspended/revoked. *See Commonwealth of PA v. Jones*, Docket no. MJ-15305-TR-0001213-2023.  Plaintiff entered a guilty plea to driving without a license.  It remains a mystery how a County paramedic could operate a medic unit without a driver's license.

inference of unlawful discrimination," the plaintiff must demonstrate that the comparator is similarly situated in all relevant respects. *Swaso v. Onslow Cty. Bd. of Educ.*, 698 Fed. App'x 745, 748 (4th Cir. 2017); *see Irani v. Palmetto Health*, 767 Fed. App'x 399, 420 (4th Cir. 2019) (per curiam); *Haywood*, 387 Fed. App'x at359; *Coleman*, 626 F.3d at 191; *Lightner v. City of Wilmington*, 545 F.3d 260, 265 (4th Cir. 2008).  This includes "that the employees 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Haywood v. Locke*, 387 Fed. App'x 355, 359 (4th Cir. 2010) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)); *see Sawyers v. United Parcel Serv.*, 946 F. Supp. 2d 432, 442 n.10 (D. Md. 2013), *aff'd*, 576 Fed. Appx. 199 (4th Cir. 2014).

And, "[i]f a plaintiff wishes to prove that a defendant's legitimate, non-discriminatory explanation is pretext by pointing to other employees who were treated differently, '[t]he similarity between comparators . . . must be clearly established in order to be meaningful.'" *Swaso*, 698 Fed. App'x at 748 (citation omitted). " 'Overall, the inquiry simply asks whether there are sufficient commonalities on the key variables between the plaintiff and the would-be comparator to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination.'" *Id.* (quoting *Eaton v. Ind. Dep't of Corr.*, 657 F.3d 551, 556 (7th Cir. 2011)).

Plaintiff here cannot meet this standard.  She offers the following comparators in paragraph 43 of the Complaint:

(a) The County hired a paramedic (Wibrit) who had an existing DUI arrest and conviction;

12

(b) The County did not discipline or terminate another paramedic (Gillis) who obtained a DUI charge;

(c) The County sent another paramedic supervisor (Graham) to treatment after he reported to work while still under the influence of alcohol, but did not terminate him;

(d) The County did not terminate another paramedic (White) who "has attended drug and alcohol treatment on numerous occasions";

(e) The County did not terminate a paramedic (Gempko) whose license was suspended from a DUI conviction

ECF 5 at ¶43.

However, none of the examples given are true comparators. Plaintiff cites no instances, particularly under Chief Tome's tenure, where a paramedic incurred *two* drunk driving arrests (both from accidents) and failed to report one of them to the County. Even assuming Plaintiff's allegations in ¶43 are accurate (which they are not), still: (a) there is no allegation the County was unaware of Wibrit's existing DUI upon hire, (b) there is no allegation that Gillis received a *subsequent* DUI, or failed to report it, (c) there is no allegation that Graham's circumstances involved more than one incident, (d) there is no allegation that White incurred criminal charges at all, and (e) there is no allegation that Gempko's DUI was repeated or that he failed to disclose it. And again, there is no allegation that any of the cited examples occurred under Chief Tome's tenure. As such, Plaintiff has not stated a claim insofar as she has failed to identify a single true comparator.

Thus, Count 6 fares no better than the others and should be dismissed as well.

13

## CONCLUSION

The Complaint should be dismissed for failure to state a claim.  The County cannot employ as a paramedic entrusted with the lives of County residents an individual who has incurred multiple drunk driving arrests and has, at least in one instance, kept it a secret.  One can only envision the liability issues the County would suffer if someone was permitted to operate as an emergency first responder with Plaintiff's record of criminal and traffic offenses.

Respectfully submitted,

_____/s/_____
JASON L. LEVINE (#16631)
7225 Parkway Drive
Hanover, Maryland 21076
Tel: (443) 561-1700
Fax: (443) 561-1701
jlevine@lgit.org

Counsel for Defendant Cecil County, MD

## CERTIFICATE OF SERVICE

I certify that on August 4, 2023, the foregoing paper was filed and served CM/ECF.

_____/s/_____
JASON L. LEVINE (#16631)

14