IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DEANNA JONES | * | |
| *Plaintiff,* | * | |
| v. | * | Civil Action No. RDB-23-2076 |
| CECIL COUNTY, MARYLAND | * | |
| *Defendant.* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM ORDER

This case involves claims of retaliation and discrimination under the Maryland Fair Employment Practices Act, Md. Code Ann., State Gov't § 20-601 ("MFEPA"), the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 ("ADA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and Article 24 of the Maryland Declaration of Rights. Plaintiff Deanna Jones worked as a paramedic for Cecil County, Maryland, beginning in March 2011. In June 2020, she was charged with driving under the influence ("DUI") after getting into a motor vehicle accident while intoxicated. After reporting the charge to her employer, Jones received treatment for alcohol use disorder and returned to work. In January 2021, Jones received a second DUI charge but did not report it to her employer. That same month, the Chief of the Emergency Services Department told Jones that he found out about her alcohol use disorder through a former colleague. Four months later, in May 2021, Jones complained that Cecil County had hired a paramedic who allegedly had a sexual relationship with the Assistant Chief of the Department at a higher salary than normal. In July 2021, Jones was fired.

Jones filed a charge of discrimination against the Cecil County Department of Emergency Services with the United States Equal Employment Opportunity Commission ("EEOC") on April 7, 2022. (ECF No. 5 ¶ 2.) The EEOC declined to proceed with her claim and therefore issued her a right to sue letter on May 8, 2023. (*Id.* ¶ 3.) On July 7, 2023, Jones filed this suit against Cecil County in the Circuit Court for Cecil County. (ECF No. 5.) In her Complaint, she brings six counts alleging violations of MFEPA, the ADA, Title VII, and Article 24 of the Maryland Declaration of Rights. On August 2, 2023, Defendant Cecil County removed to this Court based on federal question jurisdiction (ECF No. 1) and thereafter moved to dismiss the Complaint for failure to state a claim (ECF No. 7.) The parties' submissions have been reviewed, and no hearing is necessary. *See* Loc. R. 105.6. For the reasons stated below, Cecil County's Motion to Dismiss (ECF No. 7) is GRANTED and the Complaint is DISMISSED WITH PREJUDICE.

## BACKGROUND

This Court accepts as true the facts alleged in the plaintiffs' complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). Plaintiff Deanna Jones was hired as a paramedic for Cecil County, Maryland in March 2011. (ECF No. 5 ¶ 10.) This role required her to respond to calls for emergency medical assistance, assess patients' conditions, provide first-aid treatment and life support care, and transport patients to the hospital for emergency care. (*Id.*) In June 2020, Jones was involved in a motor vehicle accident and charged with Driving Under the Influence ("DUI") after officers detected high blood alcohol concentration levels in her system. (*Id.* ¶ 12.) She was found guilty of that offense. (ECF No. 7-2.) Jones alleges that she has alcohol use disorder. (ECF No. 5 ¶ 13.) She notified the then-Chief of the Cecil

County Department of Emergency Services Richard Brooks, Deputy John Donohue, and the president of her union, Patrice Burchett, of her DUI charge and her intention to seek treatment for alcohol use disorder at the International Association of Fire Fighters Center of Excellence for Behavioral Health Treatment and Recovery ("Center of Excellence"). (*Id.*) Brooks offered to support Jones in court proceedings, and Cecil County leadership committed to supporting her through her treatment. (*Id.* ¶ 14.) Brooks explained to Jones that she would not be disciplined but that the DUI would be noted in her employee personnel file and that she would be suspended from treating patients until she completed treatment. (*Id.*) Jones began her treatment at the Center of Excellence on June 22, 2020, and she graduated from that program one month later on July 31, 2020. (*Id.* ¶ 13.) During treatment, she was diagnosed with anxiety, depression, and post-traumatic stress disorder ("PTSD"). (*Id.*) Her treatment provider determined that Jones experienced numerous traumatic events as a paramedic that contributed to the onset of her conditions. (*Id.*) After concluding treatment, Jones met with Brooks and Burchett, and they welcomed her back to full duty without restrictions. (*Id.*)

In January 2021, Jones was charged with a second DUI. (*Id.* ¶ 16.) She informed the president of her union, Bill Adams, of her charge. (*Id.*) Adams told her that Cecil County policies did not require her to report the charge to the Department unless she was convicted. (*Id.*) Jones did not report the second DUI. (*Id.*) That same month, Jones spoke over the phone with the newly appointed Chief of the Emergency Services Department, Wayne Tome. (*Id.* ¶ 17.) Tome mentioned that a former colleague of his, Chuck Evans, received treatment at the Center of Excellence. (*Id.*) Tome asked Evans about Jones, and Evans informed him of Jones's PTSD. (*Id.*) Jones had never shared any information about her treatment with Tome. (*Id.* ¶ 18.)

Tome allegedly "taunted" Jones with his knowledge about the disorder and treatment. (*Id.* ¶ 20.) On one occasion while on a dispatch with an unconscious victim in the back of the ambulance, Tome stated to Jones "I know why you're in treatment, and I know you have drinking problem." (*Id.*) Tome also allegedly attempted to solicit information from Jones. (*Id.*) Jones alleges that Tome "has targeted people in the past that have PTSD." (*Id.*)

In May 2021, Jones learned that a new full-time paramedic was hired at a much higher salary than usual. (*Id.* ¶ 28.) Jones voiced concerns about this hiring at a supervisors' meeting with Assistant Chief Andrew Budzialek. (*Id.* ¶ 29.) She "also shared her concerns with the union and assisted in filing employee grievances." (*Id.* ¶ 30.) The grievance process revealed that Cecil County hired paramedic Bethany Broderdorp at a rate of $10,000 more per year than at least 20 more experienced employees.[1] (*Id.*) Jones alleges Broderup had a prior sexual relationship with Assistant Chief Budzialek. (*Id.* ¶ 31.)

On July 2, 2021, Cecil County Human Resources Director Angela Lawson called Jones and informed her that she was placed on administrative leave pending an investigation. (*Id.* ¶ 33.) Lawson further stated that Jones did not have a right to know the purpose of the investigation. (*Id.*) Cecil County never contacted or interviewed Jones during the investigation. (*Id.* ¶ 34.) On July 9, 2021, Lawson called Jones again and advised her that she was terminated because of her second DUI charge. (*Id.*) Lawson stated the charge violated the Department's policies and was a "disgrace to the county." (*Id.*) Cecil County noted in a termination letter that the DUI constituted "conduct of behavior that would bring discredit to the County." (*Id.*)

---

[1] Jones also alleges that Burchett and Adams posted complaints on Facebook about Cecil County's unequal pay practices, and that the County issued written warnings against both of them. (*Id.* ¶ 37.)

Jones alleges that the Department has employed and promoted employees with charges similar to her DUI charge. (*Id.* ¶ 42.) She also alleges that some employees contacted her after she was fired to ask for advice on how to keep their jobs. (*Id.*) Months after her termination, Jones checked back into a rehabilitation program for her alcohol use disorder on September 29, 2022. (*Id.* ¶ 23.)

Jones filed a charge of discrimination against the Cecil County Department of Emergency Services with the United States Equal Employment Opportunity Commission ("EEOC") on April 7, 2022. (ECF No. 5 ¶ 2.) The EEOC declined to proceed with her claim and therefore issued her a right to sue letter on May 8, 2023. (*Id.* ¶ 3.) On July 7, 2023, Jones filed this suit against Cecil County in the Circuit Court for Cecil County. (ECF No. 5.) In her Complaint, Jones brings six counts: discrimination under the Maryland Fair Employment Practices Act, Md. Code Ann., State Gov't § 20-601 ("MFEPA") (Count I); retaliation under MFEPA (Count II); discrimination under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 ("ADA") (Count III); retaliation under the ADA (Count IV); retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (Count V); and an equal protection violation under Article 24 of the Maryland Declaration of Rights (Count VI). On August 2, 2023, Defendant Cecil County removed to this Court based on federal question jurisdiction (ECF No. 1) and thereafter moved to dismiss the Complaint for failure to state a claim (ECF No. 7.) The matter is ripe for review.

## STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil

Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action. *Twombly*, 550 U.S. at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011). "In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) (citing *Sec'y of State for Defence v. Trimble Nav. Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)). "[I]t is well established that a document attached to a motion to dismiss may be considered when evaluating a motion to dismiss if the document was 'integral to the complaint and authentic.'" *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 164 (4th Cir. 2016) (quoting *Trimble*, 484 F.3d at 705).

# ANALYSIS

## I.    Retaliation

Jones alleges retaliation under the Maryland Fair Employment Practices Act, Md. Code Ann., State Gov't § 20-601 ("MFEPA") (Count II), the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 ("ADA") (Count IV), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (Count V). This Court analyzes retaliation claims under MFEPA using the same framework as federal statutes such as the ADA and Title VII. *Payne v. Medstar Health, Inc.*, No. RDB-21-2841, 2022 U.S. Dist. LEXIS 224368, *14 (D. Md. Dec. 12, 2022) (citing *Buckmaster v. Nat'l R.R. Passenger Corp.*, No. CV RDB-19-3203, 2022 WL 1081947, at *6 (D. Md. Apr. 11, 2022)) (ADA); *Lowman v. Maryland Aviation Admin.*, No. CV JKB-18-1146, 2019 WL 133267, at *4 (D. Md. Jan. 8, 2019) (Title VII). Plaintiff must plead facts plausible to allege that she (1) was engaged in a protected activity, (2) her employer took adverse action(s), and (3) there was a causal link between the protected activity and the employer's action. *Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *Mackey v. Shalala*, 360 F.3d 463, 469 (4th Cir. 2004)), *aff'd sub nom. Coleman v. Ct. of Appeals of Maryland*, 566 U.S. 30 (2012).

Jones has not plausibly alleged that she was engaged in a protected activity. The United States Court of Appeals for the Fourth Circuit "has recognized, consistent with the express language of section 2000e-3(a), that an employer may not retaliate against an individual either for 'opposing discriminatory practices in the workplace' or for 'participating in an ongoing investigation or proceeding under Title VII.'" *McNair v. Computer Data Sys., Inc.*, No. 98-1110, 1999 U.S. App. LEXIS 1017, at *13–14 (4th Cir. Jan. 26, 1999) (quoting *Laughlin v. Metropolitan Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998)). The "opposition clause" covers

a much broader range of employee conduct than the "participation clause," but the "opposition clause" still requires the employee to have opposed employment practices that are actually unlawful. In other words, opposition to unfair but lawful practices does not substantiate a retaliation claim. *McNair*, 1999 U.S. App. LEXIS 1017, at *13–14.

Jones argues that her "sharing concerns" and helping file grievances due to unfair pay practices is a protected activity. This argument is unavailing because, as the Fourth Circuit held in *McNair*, employees are not protected from any practices they find to be unfair. Jones must have reasonably believed that the action she opposed was unlawful under Title VII, the ADA, and MFEPA and that her actions in opposition were reasonable. *See Netter v. Barnes*, 908 F.3d 932, 937–38 (4th Cir. 2018). However unfair the payment practices may be, favoritism towards family and friends is not an actionable violation without the existence of improper discriminatory intent—even if there were a sexual relationship. *See e.g.*, *Holder v. Raleigh*, 867 F.2d 823, 825–26 (4th Cir. 1989); *Becerra v. Dalton*, 94 F.3d 145 (4th Cir. 1996). Furthermore, Jones does not plausibly allege that she subjectively believed that the alleged pay disparity was illegal. During Jones' various meetings and conversations where she shared her concerns, she never made mention that the practice was illegal or a violation of MFEPA, the ADA, or Title VII. For example, in *Crawford v. Metro Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 276 (2009), the employee reported sexual harassment—an unlawful activity—to the employer. Jones, conversely, merely opposed favoritism, which is not unlawful.

Furthermore, even if Jones did engage in a protected activity, the retaliation claim would still fail because Jones fails to plausibly allege a causal link between the protected activity and the adverse action. Jones must demonstrate a "but-for" connection between her activity

and the adverse employment action. *See Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). Jones may achieve this through providing evidence of temporal proximity, or "the existence of other facts that alone, or in addition to temporal proximity, suggests that the adverse employment action occurred because of the protected activity." *Johnson v. United Parcel Serv.*, Inc., 839 F. App'x 781, 784 (4th Cir. 2021); *see also Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (noting that the alleged temporal proximity must be "very close" (quoting *O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248 (10th Cir. 2001)). A two-month time gap, such as the one alleged by Jones from May 2021 to July 2021, has previously been rejected by the Fourth Circuit. *See Horne v. Reznick Fedder & Silverman*, 154 F. App'x 361, 364 (4th Cir. 2005) ("[T]his court has previously noted that a lapse of two months between the protected activity and the adverse action is 'sufficiently long so as to weaken significantly the inference of causation.'" (quoting *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003))). Jones fails to allege any additional facts to support her theory of causation. Based on the facts alleged, the temporal proximity in this case is not so close as to sufficiently allege causation. Jones has therefore failed to state a plausible claim for retaliation. Accordingly, the County's Motion to Dismiss (ECF No. 7) is GRANTED as to Count II (MFEPA retaliation), Count IV (ADA retaliation), and Count V (Title VII retaliation). Counts II, IV, and V are therefore DISMISSED WITH PREJUDICE.

## II.    Discrimination

The County also moves to dismiss Jones's discrimination claims under Title 20 of the Maryland Code and the ADA. Maryland courts routinely look to Title VII cases to determine a defendant's scope of liability under Title 20 of the Maryland Code. *See, e.g., Moore v. Sprint*

*Comm'c'n Co., LP*, No. CIV.A. RDB-11-00290, 2012 WL 4480696, at *6 (D. Md. Sept. 27, 2012) (citing *State Comm'n on Hum. Rels. v. Kaydon Ring & Seal, Inc.*, 818 A.2d 259, 277 (Md. Ct. Spec. App. 2003)). Accordingly, to establish a *prima facie* case under Title 20, a Plaintiff must allege the same elements as required for a Title VII claim. *Nelson v. State Emps. Credit Union of Maryland, Inc.*, No. CIV.A. RDB-12-3230, 2013 WL 3700984, at *4 (D. Md. July 12, 2013). Jones must demonstrate that (1) she is a member of a protected class, (2) her job performance was satisfactory, (3) she was subjected to an adverse employment action, and (4) similarly situated employees outside the protected class were treated differently. *See Moore*, 2012 U.S. Dist. LEXIS 139787, at *18–19 (citing *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004)).

Jones indicates that employees who may also suffer from alcohol use disorder were not fired, which makes it implausible that Jones was terminated because of her alleged disability. Jones discusses many of her colleagues being able to keep their jobs after instances such as receiving DUI charges, reporting to work while under the influence of alcohol, and receiving treatment for forms of alcohol or other substance abuse disorders. Jones states in her Complaint that "while all of the aforementioned employees have the same or substantially similar charges against Lt. Jones, unlike Lt. Jones, these employees continued their employment at Cecil County following said charges and/or convictions of alcohol-related offenses, including DUI charges." (ECF No. 5 ¶ 44.) It is not plausible for Jones to allege that the basis of her termination was disability discrimination, especially when other individuals with the same or a similar alleged disability as her were not terminated despite being similarly situated.

The Complaint also fails to state a plausible discrimination claim under the ADA. Title I of the ADA prohibits employment discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employee . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To establish a claim for disability discrimination under the ADA, Jones must prove "(1) that she has a disability, (2) that she is a 'qualified individual' for the employment in question, and (3) that [her employer] discharged her (or took other adverse employment action) because of her disability." *See e.g.*, *EEOC v. Stowe–Pharr Mills, Inc.*, 216 F.3d 373, 377 (4th Cir. 2000). Even assuming arguendo that Jones is a qualified individual with a disability under the meaning of the ADA, she has not plausibly stated that she was terminated because of her disability. Jones provides nothing more than conclusory statements that she was terminated was because of her alcohol use disorder. As discussed, the facts alleged by Jones indicate that she was terminated because of her second DUI, not because of her disability. Moreover, the Department's support of Jones after her first DUI undermines her claim of discrimination. Jones admits that the Department was supportive of her following her first DUI and that it was only after her second DUI that she was terminated. On its face, therefore, the Complaint does not allege facts supporting a claim for discrimination. In sum, Jones fails to state plausible discrimination claims under both Title 20 and the ADA. Accordingly, the County's Motion to Dismiss (ECF No. 7) is GRANTED as to Count I (Title 20 discrimination) and Count III (ADA discrimination). Counts I and III are therefore DISMISSED WITH PREJUDICE.

### III.   Article 24 of the Maryland Declaration of Rights

Article 24 of the Maryland Declaration of Rights ensures that "no man ought to be . . . deprived of his life, liberty or property." Md. Const. art. XXIV ("Article 24"). In its guarantees and application, Article 24 "is the state law equivalent of the Fourteenth Amendment of the United States." *Rosa v. Bd. of Educ. of Charles Cnty., Md.*, No. 8:11-CV-02873-AW, 2012 WL 3715331, at *6 (D. Md. Aug. 27, 2012) (citing *Pitensberger v. Pitensberger*, 410 A.2d 1052, 1056 (Md. 1980)). Although the provision's text "contains no express Equal Protection Clause," under Maryland law it is "settled" that the "concept of equal treatment is embodied in the due process requirement of Article 24 of the Declaration of Rights." *Town of Easton v. Pub. Serv. Comm'n of Md.*, 838 A.2d 1225, 1237 n.11 (Md. 2003) (quoting *Attorney General v. Waldron*, 426 A.2d 929, 940–41 (Md. 1981)). Accordingly, as a substantive matter, Article 24 is interpreted coextensively with the Fourteenth Amendment to the United States Constitution. *Taylor v. Go-Getters, Inc.*, 20-cv-3624, 2021 WL 5840956, at *16 (D. Md. Dec. 9, 2021).

To state an equal protection claim, a plaintiff must allege (1) that she has been treated differently from others with whom she is similarly situated, and (2) that the unequal treatment was the result of intentional or purposeful discrimination. *See, e.g., City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439–40 (1985); *Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 818–19 (4th Cir. 1995); *Traversa v. Ford*, 718 F. Supp. 2d 639, 644 (D. Md. 2010). "Where a plaintiff attempts to rely on comparator evidence to establish circumstances giving rise to an inference of unlawful discrimination, however, '[t]he similarity between comparators . . . must be clearly established in order to be meaningful.'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 748 (4th Cir. 2017) (alterations in original) (quoting *Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 265 (4th Cir. 2008)). "This similarity can be demonstrated by evidence

that the employees 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct *without such differentiating or mitigating circumstances* that would distinguish their conduct or the employer's treatment of them for it.'" *Irani v. Palmetto Health*, 767 F. App'x 399, 420 (4th Cir. 2019) (alterations in original) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). "Overall, the inquiry simply asks whether there are sufficient commonalities on the key variables between the plaintiff and the would-be comparator to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination." *Swaso*, 698 F. App'x at 748 (quoting *Eaton v. Ind. Dep't of Corr.*, 657 F.3d 551, 556 (7th Cir. 2011)). "[I]t is the plaintiff's task to demonstrate that similarly situated employees were not treated equally." *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 258 (1981) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973)).

In this case, Jones offer five comparators: (1) a paramedic who was hired with a preexisting DUI conviction; (2) a paramedic who was not terminated or disciplined after a DUI charge; (3) a paramedic who reported to work intoxicated and was sent to treatment but not terminated; (4) a paramedic who attended drug and alcohol treatment on numerous occasions; and (5) a paramedic, whose license was suspended from a DUI conviction, who underwent treatment and did not receive any corrective action. (ECF No. 5 ¶ 43.) Notably, none of these alleged comparators have a second DUI charge, if they have one at all. That alone prevents these comparators for being relevant for Jones's case. Moreover, none of the alleged comparators failed to disclose their DUIs. Jones, conversely, failed to disclose her second DUI. These comparators therefore lack necessary similarities to support Jones's case,

13

and Jones is therefore left with threadbare conclusions that lack factual support. In other words, Jones fails to state a claim under Article 24 of the Maryland Declaration of Rights. Accordingly, the County's Motion to Dismiss (ECF No. 7) is GRANTED and Count VI is DISMISSED WITH PREJUDICE.

## IV.    Dismissal with Prejudice

A plaintiff may amend its complaint as a matter of course within twenty-one (21) days of serving it, or twenty-one days "after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "[W]hen the district court believes a deficiency in a complaint can be cured, it should say so and grant leave to amend." *Britt v. DeJoy*, 45 F.4th 790, 796 (4th Cir. 2022). Otherwise, "when a district court dismisses a complaint or all claims without  providing leave to amend . . . the order dismissing the complaint is final and appealable." *Id.*

Quite simply, an amendment of the Complaint would be futile in this case because Plaintiff's claims are patently unsupported. Her second DUI provides an entirely legitimate reason for termination of her employment as a paramedic and sets Plaintiff apart from all her alleged comparators. Because dismissal without leave to amend is in effect a final order, the Court concludes that such dismissal is with prejudice. Accordingly, all of Plaintiff's claims are dismissed with prejudice. *See Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618 (4th Cir. 2008) (affirming dismissal with prejudice when "amendment would be futile in light of the fundamental deficiencies in plaintiffs' theory of liability").

14

**CONCLUSION**

For foregoing reasons, it is this 28th day of March, 2024, ORDERED that:

1.  Defendant's Motion to Dismiss (ECF No. 7) is GRANTED;

2.  The case is DISMISSED WITH PREJUDICE;

3.  The Clerk of the Court shall CLOSE this case;

4.  The Clerk shall transmit copies of this Memorandum Order to counsel of record.

Dated: March 28, 2024

_____
/s/
Richard D. Bennett
United States Senior District Judge

15